## MURPHY WALL BED CO. v. PACIFIC SPRING BED CO.

(District Court, N. D. California, Second Division. February 4, 1916.)

No. 15589.

1. Patents ⬅➡327—Prior judgment, involving substantially same issues and parties, held controlling.

Where a suit by the same plaintiff over the same patent, involving substantially the same issues, and in which the present defendant had full control of the defense, had previously been decided by a court of another district, the judgment therein was controlling, not only under the rule of comity, but under the principle of res judicata.

2. Patents ⬅➡328—Murphy reissue, No. 13,428, held valid and infringed.

Murphy reissue, No. 13,428, providing means of passing a standard width double bed, through an ordinary size closet door and concealing it in an ordinary size closet, is a real advance in the art, and is entitled to a broad conception under the doctrine of equivalents, and is infringed by a device which depends on the fundamental idea of revolving the bed on a vertical axis to shift it through the wall opening.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Patents ⊚⇒138(2)—Defendant held not entitled to benefit of conception before plaintiff's application for reissue.**

Where claims substantially identical with claims in plaintiff's application for reissue were embodied in its application for a second patent, of which defendant had knowledge before it conceived the idea, defendant could not be given the benefit of the conception covered by plaintiff's application, notwithstanding plaintiff had not then made his application for the reissue.

In Equity. Suit by the Murphy Wall Bed Company against the Pacific Spring Bed Company for infringement of claims 9, 10, 13, and 14 of United States reissue letters patent No. 13,428, issued on June 11, 1912, to Murphy Wall Bed Company, for "disappearing bed." On final hearing. Decree for plaintiff.

William K. White, of San Francisco, Cal., and Frederick S. Lyon, of Los Angeles, Cal., for plaintiff.

Scrivner & Montgomery and N. A. Acker, all of San Francisco, Cal., and J. N. Young, of Oakland, Cal., for defendant.

VAN FLEET, District Judge. I have asked counsel to be present this morning that I may announce the conclusions that I have reached in this case, as I find that by reason of the opening of the new term I shall not have an early opportunity to put my views in writing, and I have concluded that it will be better for the parties to have a decision now, than to delay it for a reason which possibly would be of no material value over a present statement of my conclusions, which counsel, who are entirely familiar with the case, will be able to appreciate, notwithstanding the somewhat general manner in which they are stated.

[1] I shall pass over briefly the question of comity and res judicata, urged by the plaintiff. It appears that in a suit by the same plaintiff over the same patent, brought in the Southern district and decided by Judge Wellborn, substantially the same issues were involved as are presented in this case, and that growing out of the situation of the parties the present defendant was given and assumed full control of the defense in that case. It is contended, and I think under the authorities correctly so, that not only by the rule of comity, but upon the principle of res judicata, the judgment in that case should be held controlling here.

[2] In view, however, of the earnest desire of the parties, especially of the defendant, that I should examine the case on its merits for myself, I have taken the pains to do so, and have fully reviewed, not only the elaborate briefs of the parties, but the evidence in full. As a result of this examination I have unhesitatingly reached a conclusion in all substantial respects in accord with the views expressed by Judge Wellborn in the case referred to. That the Murphy patent in suit— reissue No. 13,428—is a valid one I have no doubt. It involves the art relating to concealed beds, commonly termed wall beds. The art has an active history of something over 70 years, and it appears, I think without substantial controversy, that until the conception of the grantor of the plaintiff the idea of providing means of passing through

an ordinary size closet door, of 2½ or 3 feet in width, and concealing in a closet of ordinary size, a standard width double bed, was never given to the art prior to the device of the patent in suit. I regard the invention in that respect as a pioneer in scope, because, as disclosed by the evidence, it has revolutionized the art, and has been followed by such an universal adoption of the conception in its essential features as to justly be regarded as possessing the elements of an original conception.

I am quite unable to agree with the view, so urgently put forward by the defendant, that this conception was in any material respect anticipated by any one of the several patents relied on for the purpose. In view of its simplicity, now that the idea is disclosed, it may easily be said that in the light of the prior art it would have been obvious; but the history of the art shows very clearly that it was not so. There had been issued something like 800 prior patents in the art, all looking to the idea of attaining the same end; that is, of securing some means of concealing in an ordinary room used for general household purposes a standard double width bed in such manner that its presence would not be obvious to the ordinary observer, but without previous success, and that being so, and the art showing no prior evidence of the advance here made, or any real development of the essential idea embraced in this patent, I think that it must be given the benefit of a broad conception.

The principle upon which the device works is that of providing means whereby a bed of the character mentioned may be turned upon a vertical axis adjacent to one side of the opening entirely through a closet door of ordinary width, and concealed in a closet of ordinary standard dimensions. If I am right as to the scope of the conception, the invention, upon well-established principles, covers any means by which the same thing may be accomplished in an equivalent way, because, being of a broad character, it is entitled to the full benefit of the doctrine of equivalents; and I am quite satisfied that the alleged offending device of the defendant, while mechanically different in some respects, nevertheless involves substantially the same principle as that upon which plaintiff's conception is based. It is true that the defendant's device involves some additional movements, and it may be that it is an improvement in some respects over the plaintiff's device; but this does not avoid infringement of the fundamental conception of the plaintiff.

[3] So far as concerns the objection that the patent in suit is void as a reissue, I think that I need not dwell upon that at any considerable length. To my mind there is nothing of substance in it. Of the four claims here involved—9, 10, 13, and 14—the first two are claims that were in Murphy's original patent. The other two—13 and 14—were added in the reissue, and the propriety of a reissue grew out of the fact that Murphy determined that the claims of his original patent were not commensurate with, nor broad enough to cover, his invention, and which I think is obviously correct; but the claim of the defendant that, intermediate the issuance of the original patent and the application for the reissue, its assignors had conceived the idea embraced in

claims 13 and 14, is, to my mind, entirely refuted by the evidence. The record discloses that claims substantially identical with 13 and 14 were embodied in the application of Murphy for a second patent, which was prior to the Smith application. The language is not identical, but it covers precisely the same idea of means; and that being true, and the evidence showing that the Smiths had knowledge of this before their application was made—before they ever conceived the idea at all—they cannot be given the benefit of a conception which Murphy had covered by his earlier application, notwithstanding he had not then made his application for the reissue. I am left by the authorities without doubt that the reissue is valid, and protects the plaintiff in the practice of the art under the claims as set forth in its patent.

These are the only points I deem it essential to notice. A decree may be drawn in favor of plaintiff.